```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                CORPUS CHRISTI DIVISION
```

| | |
|---|---|
| L.J. MCCOY and ANTONIO V. THOMPSON, § § § | |
| Plaintiffs, § § | |
| vs. § | C.A. NO. C-05-370 |
| § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al, § § § | |
| Defendants. § | |

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant Annmarie De La Rosa's Motion for Summary Judgment (D.E. 48). For the reasons stated below, Defendant De La Rosa's motion is DENIED.

### I. JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

### II. BACKGROUND

On July 27, 2005, Plaintiffs L. J. McCoy and Antonio Thompson (collectively "Plaintiffs") filed suit in this Court against the Texas Department of Criminal Justice ("TDCJ"), Lieutenant Annmarie De La Rosa ("Defendant De La Rosa"), and several individual TDCJ employees. Plaintiffs sued on behalf of Micah Burrell ("Burrell"), deceased, alleging that Defendants caused Burrell's death and violated his rights under the Eighth Amendment, the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and Chapter 121

of the Texas Human Resources Code. (Pls.' Sec. Am. Compl. ("SAC") at ¶¶ 1-9.) With respect to Defendant De La Rosa in particular, Plaintiffs sued Defendant De La Rosa in her individual capacity only, pursuant to 42 U.S.C. § 1983, for allegedly violating Burrell's Eighth Amendment rights.

On April 14, 2006, Defendant De La Rosa filed a Motion for Summary Judgment based on qualified immunity. (D.E. 48.) On May 19, 2006, Plaintiff filed a response to Defendant De La Rosa's motion. (D.E. 63.) On June 1, 2006, Defendant De La Rosa filed a reply to Plaintiff's response. (D.E. 68.) The following facts are not in dispute:

In August 2004, Burrell was a prisoner in the custody of the TDCJ and incarcerated in "Administrative Segregation" at the McConnell Unit in Beeville, Texas. (Pls.' Ex. ("PE") E at 1.) At that time, Defendant De La Rosa was a Lieutenant correctional officer at the McConnell Unit. (Def.'s Ex. ("DE") B at 1.) On August 1, 2004, Defendant De La Rosa was standing in the prison medical department when a call came over her radio indicating that an inmate was having an asthma attack and needed medical assistance. (DE B at 1.) Although Defendant De La Rosa did not immediately respond to the call, eventually she and several other TDCJ employees, including Nurse Rhonda Cubbage, proceeded to Burrell's cell. (DE B at 1; PE H at 155.) When they arrived at the cell, Defendant De La Rosa and the other officers found Burrell lying on his bunk. (See PE E at 1; Def.'s Reply Ex. ("DRE") A, D

at 83.)  Burrell did not respond to verbal calls from the officers. (PE E at 1; DE B at 1-2.)  When Burrell's cell door was opened, he was restrained and transported to the prison medical center by stretcher.  (PE E at 1.)  At the prison medical center, Burrell was not breathing and did not have a pulse.  (PE E at 1.)  An ambulance was called and transported Burrell to Christus Spohn Hospital in Bee County, Texas, where he was pronounced dead.  (PE D, E at 2.)

**III.  DISCUSSION**

    **A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably

find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.  Qualified Immunity**

Defendant De La Rosa may be shielded from liability for civil damages if her actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." See, e.g., Hope v. Pelzer, 536 U.S. 730, 739 (2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified

immunity operates to ensure that before officials are subjected to suit, they are on notice that their conduct is unlawful.  See Saucier v. Katz, 533 U.S. 194, 206 (2001).  The qualified immunity determination involves a two-step analysis.  Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004).  First, a court must determine whether a "constitutional right would have been violated on the facts alleged."  Id. (citing Saucier, 533 U.S. at 200).  Second, the court must determine whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. (citing Hope, 536 U.S. at 739).  If, viewing the evidence in the light most favorable to the plaintiff, "reasonable public officials could differ on the lawfulness of the defendant's actions, then that defendant is entitled to qualified immunity."  Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004); see also Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997).

**C.    Deliberate Indifference to Serious Medical Needs**

**1.    Step 1: Violation of a Constitutional Right**

Plaintiffs claim that Defendant De La Rosa violated Burrell's Eighth Amendment right to adequate medical care.  It is well-settled that "[t]he Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners."  Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002) (citing Estelle v. Gamble, 429 U.S. 97,

104 (1976)). In order to hold a prison official liable for denial of medical treatment, a plaintiff must show (1) "objectively that he was exposed to a substantial risk of serious harm;" (2) that "jail officials were actually aware of the risk;" and (3) "that jail officials acted or failed to act with deliberate indifference to that risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994)). "Deliberate indifference is an extremely high standard to meet" and encompasses only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." See, e.g., Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997). An official's "failure to alleviate a significant risk that [she] should have perceived, but did not is insufficient to show deliberate indifference." Domino, 239 F.3d at 756; see also Hare v. City of Corinth, 74 F.3d 633, 648 (5th Cir, 1996). It is also well-settled that negligent medical care does not constitute a valid claim under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Rather, a prisoner's constitutional rights are violated only if "jail officials were actually aware of the risk [to the prisoner], yet consciously disregarded it." Lawson, 286 F.3d at 262.

In this case, there is no dispute that Burrell was exposed to a substantial risk of serious harm when he suffered the ultimately-fatal asthma attack in his cell. The only dispute is whether

Plaintiffs have sufficient evidence for a jury to find that Defendant De La Rosa was subjectively aware of that risk, and whether she responded to that risk with deliberate indifference.

### a. Knowledge of a Substantial Risk

The question of whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer v. Brennan, 511 U.S. 825, 842 (1994). For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.; see also United States v. Gonzales, 436 F.3d 560, 573-74 (5th Cir. 2006). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In this case, Plaintiffs have circumstantial evidence supporting an inference that Defendant De La Rosa knew Burrell was exposed to a substantial risk of serious harm. Plaintiffs' evidence shows that Burrell informed neighboring inmates that he was having an asthma attack, and that those inmates, in turn, informed the guards. (PE A at ¶¶ 3-5; B at ¶¶ 3-4.)[1] Although

---

[1] Defendant De La Rosa, in her reply to Plaintiffs' response, objects to Plaintiffs' Exhibits A and B on the grounds that, although the documents purport to be affidavits, they are unsworn and have not been signed before a notary. (Reply at p.

Burrell's appearance at the time the Defendant De La Rosa arrived at the cell is unclear[2], at least one inmate in a neighboring cell could hear Burrell suffering the asthma attack (shortly before the officers arrived) and stated that he:

> could hear that Mr. Burrell was in trouble. It sounded like he was having convulsions. I could hear him shaking hard and having great difficulty breathing. I heard a loud thud come from his cell. I asked Mr. Burrell if he was ok, but he didn't answer. I heard Mr. Burrell gasping for air.

(PE A at ¶ 6.)  When officers arrived at Burrell's cell, he was lying on his back and was not responding to calls from inmates and guards.  (PE A at ¶¶ 3, 6, 8, 9-10; PE B at ¶¶ 4-5.)  One guard observed Burrell continuously for five to ten minutes while waiting for Defendant De La Rosa to arrive, and did not see any movement or change on the part of Burrell.  (See PE G.)  Furthermore, after Defendant De La Rosa arrived at the cell, an inmate observed

---

1.) Generally, "an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988).  There is, however, a statutory exception to this rule, "which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" Id.; 28 U.S.C. § 1746.  In this case, Plaintiffs' Exhibits A and B do not appear to be sworn and signed before a notary.  The Exhibits do, however, assert that they are made "under the pains and penalty of perjury" and recite that "the foregoing statement is true and correct."  (PE A, B at p. 3.)  Therefore, Exhibits A and B meet the requirements of 28 U.S.C. § 1746 and are competent summary judgment evidence. Defendant De La Rosa's objection to those Exhibits is OVERRULED.

[2] Defendant De La Rosa for example, testified regarding Burrell's appearance that: "I know his chest moved once or twice, but I'm not – I'm guessing he was breathing."  (DRE at p. 85.)

Burrell and stated that he "could see Mr. Burrell laying [sic] on the ground, and he didn't seem to be breathing." (PE A at ¶ 13.) A jury could find from this evidence that, under the circumstances, it was "obvious" that Burrell had a serious medical need and infer that Defendant De La Rosa had the requisite subjective knowledge.

### b. Deliberate Indifference

Plaintiffs must also show that Defendant De La Rosa responded to Burrell's needs with deliberate indifference. Deliberate indifference requires a plaintiff to show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gonzales, 436 F.3d at 575; see also Domino, 239 F.3d at 756. Deliberate indifference encompasses only the "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick, 105 F.3d at 1061. In Fielder v. Bosshard, 590 F.2d 105 (5th Cir. 1979), the Fifth Circuit addressed the issue of deliberate indifference in a case in which a prisoner asked jailers for medical attention for delirium tremens. The prisoner had severe symptoms, including mumbling incoherently and waving his arms, but jailers nevertheless accused him of "faking," "joking," and "putting on." Id. at 108. The prisoner eventually died. Id. The Fifth Circuit affirmed a jury's finding of deliberate indifference, stating that:

> both the severity of the apparent illness and the [jailers'] off-hand, callous comments with respect to [the prisoner's] welfare belie the theory that they merely misdiagnosed a prisoner's sickness. There is a vast difference between an earnest, albeit unsuccessful attempt to care for a prisoner and a cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help.

Id. The Fifth Circuit went on to hold that the prisoner's evidence was sufficient, both "to support the jury's verdict" and to "negate the [jail officers'] qualified immunity." Id. at 108-10; see also Gonzales, 436 F.3d at 574 (finding sufficient evidence of deliberate indifference in part because officers taunted and mocked a prisoner in need); Odom v. S. Carolina Dep't of Corr., 349 F.3d 765, 768-72 (4th Cir. 2003) (evidence that officers laughed, mocked, and made callous remarks to a prisoner in danger supported a finding of deliberate indifference).

In this case, Plaintiffs have evidence that Defendant De La Rosa responded with deliberate indifference to Burrell's serious medical needs. For example, Plaintiffs' evidence shows that Defendant De La Rosa waited over 10 minutes before taking *any* action or opening the door to Burrell's cell, even though as many as six officers and a nurse were present at the scene. (PE A at ¶¶ 10-11; B at ¶ 6.) Defendant De La Rosa argues that she merely "followed TDCJ ad[ministrative] seg[regation] procedures for a Level III offender in opening the offender's cell door." (Mot. for Summ. Judg. at p. 7.) Plaintiffs' evidence, however, which this Court accept as true on summary judgment, contradicts Defendant De

-11-

La Rosa's explanation that any delay in opening the door was simply a result of TDCJ policies. For example, one inmate observed the following at the scene:

> A few minutes later, Lt. De La Rosa and Nurse Cubbage arrived at the cell. They were both yelling at Mr. Burrell to come to the door. Lt. De La Rosa scoffed and said "He's faking it." She taunted Burrell, telling him that, "You picked a bad day for this" because "the weatherman said it wasn't supposed to be hot today and I know its cool in that cell." Nurse Cubbage also said that Mr. Burrell was faking because "if you were having an asthma attack your lips would be purple, and they aren't purple." This went on for over ten minutes. . . . Lt. De La Rosa [and the others] were laughing and smiling. They said that when they took Mr. Burrell out of the cell and put him on the gurney that he would wake up and be fine.

(PE A at ¶¶ 10-11.) Another inmate observed "Lt. De La Rosa mock[ing] Mr. Burrell's condition, saying 'I've got asthma and you aren't having an asthma attack, I can see you breathing normal.'" (PE B at ¶ 6.) The inmate also stated that "Lt. De La Rosa said 'You should have pulled this on the next shift or wait until Tuesday when I'm gone.'" (PE B at ¶ 6.) Finally, the inmate also claimed that Defendant De La Rosa told Burrell that "for you to be having an asthma attack you sure ate all your breakfast." (PE B at ¶ 8.) A jury could infer that Defendant De La Rosa's refusal to take any action for over 10 minutes, despite the presence of numerous officers, while mocking and making jokes about the prisoner, constitutes a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help." Fielder, 590 F.2d at 108. Therefore,

viewing the evidence in the light most favorable to the Plaintiffs, a jury could find that Defendant De La Rosa violated Burrell's rights under the Eighth Amendment.

### 2. Step 2: Clearly Established Right

The second step in the qualified immunity analysis requires the Court to consider whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Flores, 381 F.3d at 395. For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). A defendant is entitled to qualified immunity "so long as [her] actions could reasonably have been thought consistent with the rights [she is] alleged to have violated." Fontenot v. Cormier, 56 F.3d 669, 673 (5th Cir. 1995). The central concern of this step in the analysis is that of "fair warning" to the public official. Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004); see also Pelzer, 536 U.S. at 740.

At the time of the events giving rise to this case, the Supreme Court and the Fifth Circuit had made clear that "[t]he Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners." Lawson, 286 F.3d at 262 (citing Estelle, 429 U.S. at

-13-

104); see also Farmer, 511 U.S. at 837-39.  Furthermore, it was well-settled that an officer who mocks and refuses to treat a prisoner in obvious need of help violates the Eighth Amendment. See Fielder, 590 F.2d at 108.  Therefore, Defendant had "fair warning" and notice that the conduct she is alleged to have engaged in was unlawful and no reasonable officer could have thought such conduct to be consistent with Burrell's rights.  Accordingly, Plaintiffs have met their burden of overcoming qualified immunity on summary judgment and Defendant's motion for summary judgment on that ground is DENIED.

## IV.  CONCLUSION

For the reasons discussed above, Defendant De La Rosa's Motion for Summary Judgment (D.E. 48) is DENIED.

SIGNED and ENTERED this 26th day of June, 2006.

_____
Janis Graham Jack
United States District Judge