**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| L.J. McCOY and ANTONIO V. THOMPSON, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-370 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING PLAINTIFFS' AND DEFENDANT'S
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendant Texas Department of Criminal Justice's "Motion for Summary Judgment on Plaintiffs' Americans with Disabilities Act and Rehabilitation Act Claims" (D.E. 47), and Plaintiffs' "Motion for Partial Summary Judgment Against TDCJ on ADA and Rehabilitation Act Claims" (D.E. 88, 90).  For the reasons discussed below, the Court DENIES both Plaintiffs' and Defendant's motions for summary judgment.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

On July 27, 2005, Plaintiffs L. J. McCoy and Antonio Thompson (collectively "Plaintiffs") filed suit in this Court against the Texas Department of Criminal Justice ("TDCJ"), TDCJ's executive director Brad Livingston, and several individual TDCJ officers and employees.  (D.E. 1, 8, 17, 31.)  Plaintiffs sued on behalf of

Micah Burrell, deceased, alleging that Defendants caused Burrell's death and violated his rights under the Eighth Amendment, the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and Chapter 121 of the Texas Human Resources Code.[1]  (Pls.' Sec. Am. Compl. ("SAC") at ¶¶ 1-9.)   On April 14, 2006, TDCJ filed a Motion for Summary Judgment on Plaintiffs' ADA and Rehabilitation Act claims (D.E. 47), to which Plaintiffs filed a response (D.E. 64).  On July 14, 2006, Plaintiffs filed a Motion for Partial Summary Judgment against TDCJ on these same claims. (D.E. 88, 90.) The following facts are not in dispute:

In August 2004, Micah Burrell ("Burrell") was a prisoner in the custody of Defendant TDCJ and incarcerated in "Administrative Segregation" at the McConnell Unit in Beeville, Texas.  (Pls.' Ex. ("PE") 1 at ¶ 5; Q at 1.)[2]  Burrell suffered from asthma and, on August 1, 2004, he experienced an asthma attack in his cell.  (See PE H at 1; M at ¶¶ 2-3; Def.'s Ex. ("DE1") D at 1-3.)[3]  Several inmates in neighboring cells began to yell to the prison guards for

_____

[1] On December 1, 2005, this Court dismissed Plaintiffs' claims against TDCJ under the Texas Human Resources Code and 42 U.S.C. § 1983.  (See D.E. 23, 24, 33.)  The Court also dismissed Plaintiffs' § 1983 claims for money damages against TDCJ employees in their official capacities.  (D.E. 23, 24.)

[2] Plaintiffs' Exhibits "A" through "T" are attached to Docket Entry 58.  Plaintiffs' Exhibits "1" through "28" are attached to Docket Entry 90.

[3] For the purposes of this summary judgment order, the Court will use "DE1" to refer to the Defendant TDCJ's exhibits attached to Docket Entry 47.  The Court will use "DE2" to refer to Defendant TDCJ's exhibits attached to Docket Entry 67.

help.  (PE M at ¶¶ 3-4; O at ¶ 3.)  Officer Juan Benavides
eventually arrived at Burrell's cell and Burrell informed him that
he was having an asthma attack.  (PE 14 at 20; M at ¶ 4; O at ¶ 4.)
Officer Benavides then instructed other guards to call for a
supervisor.  (PE 14 at 22; 15 at 1.)  At some point, medical help
was also summoned.  (See PE 15 at 1.)  By the time Lt. Annmarie De
La Rosa and Nurse Rhonda Cubbage arrived at the cell, Burrell was
lying on his bunk and not responding to verbal calls from the
officers.  (See PE P at 1-2; Q at 1-2; DE2 C at 39-41; D at 54.)
Upon opening the cell door, the officers restrained Burrell and
transported him to the prison medical center by stretcher.  (PE Q
at 1.)  At the prison medical center, Burrell was not breathing and
did not have a pulse.  (PE Q at 1; R.)  An ambulance was called and
transported Burrell to Christus Spohn Hospital in Bee County,
Texas, where he was pronounced dead.  (PE Q at 1-2; R.)  An autopsy
conducted by Pathologist Gerald A. Campbell concluded that "the
immediate cause of death . . . [was] respiratory failure secondary
to a combination of asthmatic episode and aspiration of gastric
material."  (PE Q at 3.)

## III.  DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary
judgment is appropriate if the "pleadings, depositions, answers to
interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the movant bears the burden of proof on a claim or defense on which she is moving for summary judgment, she must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in [her] favor." See, e.g., Fontenot v. UpJohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). If, however, the nonmovant bears the burden of proof on a claim, the moving party may discharge her burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S.

-4-

at 325; see also Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried her burden, the nonmovant "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing

-5-

the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## B.  Defendant TDCJ's Motion for Summary Judgment

According to TDCJ, its motion for summary judgment raises only three discrete issues for consideration by this Court. (Def.'s Reply ("Reply") at 2.)  First, TDCJ claims that it is entitled to immunity from Plaintiffs' claims under § 504 of the Rehabilitation Act ("RA") and Title II of the Americans with Disabilities Act ("ADA").  (Id.; Def.'s Mot. for Sum. Judg. ("DMSJ") at 4-6, 10-13.) Second, TDCJ claims that Plaintiffs do not have "standing" to assert Burrell's rights under the ADA and RA.  (DMSJ at 3.) Finally, TDCJ argues that Plaintiffs' claims under the ADA and RA cannot succeed because Burrell did not "request an accommodation" for his disability from TDCJ.  (Reply at 2; DMSJ at 8-10.)  The

Court will discuss each of TDCJ's three arguments in turn.

### 1.   Sovereign Immunity

Defendant TDCJ claims that summary judgment is appropriate in this case because its "Eleventh Amendment immunity has not been abrogated." (DMSJ at 2.)  The doctrine of sovereign immunity "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." See, e.g., Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000) (stating that "for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001) (stating that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court"). Congress, however, has the power to "single-handedly strip the states of their Eleventh Amendment immunity and thereby authorize federal court suits by individuals against the states." Pace v. Bogalusa City School Bd., 403 F.3d 272, 277 (5th Cir. 2005).  "When Congress does this, it is exercising its power to abrogate Eleventh Amendment immunity." Id. In addition to Congress' power to abrogate immunity, a state can also be sued if it has "waive[d] its Eleventh Amendment protection and allow[ed] a federal court to hear and decide a case" by

consent.  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).  In this case, it is undisputed that TDCJ is an arm of the State of Texas and can assert sovereign immunity as a defense from suit.  Sherwinski v. Peterson, 98 F.3d 849, 851 (5th Cir. 1996).  Therefore, the only remaining question is whether Congress has abrogated TDCJ's immunity, or whether TDCJ has consented to suit under the ADA and RA.

### a.    Rehabilitation Act Claim

With respect to Plaintiffs' claim under the RA, it is clear that TDCJ is not entitled to sovereign immunity.  As this Court noted in a previous order (D.E. 23), § 504 of the RA prohibits discrimination against qualified individuals with disabilities by recipients of federal financial assistance.  29 U.S.C. § 794 et seq.  Pursuant to 42 U.S.C. § 2000d-7, States and public entities receiving federal financial assistance *specifically waive* their Eleventh Amendment immunity from claims under § 504 of the RA:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

Id. at (a)(1).  That is, a state, or state agency, consents to be sued under the RA when it accepts federal funds.  See Miller v. Texas Tech Univ. Health Scis. Ctr., 421 F.3d 342 (5th Cir. 2005) (en banc); Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 453 (5th Cir. 2005) (finding that a state entity's "receipt of

federal education funds constituted a knowing and voluntary waiver
of sovereign immunity as to claims under § 504 [of the RA]"); Pace,
403 F.3d at 282 (5th Cir. 2005) (en banc) (stating that § 2000d-7
"clearly, unambiguously, and unequivocally conditions receipt of
federal funds . . . on the State's waiver of Eleventh Amendment
Immunity"); Thomas v. Univ. of Houston, 2005 WL 2902207 (5th Cir.
Nov. 4, 2005) (unpublished); Espinoza v. Texas Dept. of Public
Safety, 2005 WL 2044547 (5th Cir. Aug., 25, 2005) (unpublished).
In this case, Plaintiff has provided the Court with evidence that
TDCJ is a recipient of federal financial assistance, and TDCJ does
not dispute this fact in its Motion for Summary Judgment.  (PE 1 at
¶ 9; SAC at ¶ 20; see also DMSJ at 3-6.)  Therefore, TDCJ is not
entitled to immunity on Plaintiffs' Rehabilitation Act claim.

### b.   Americans With Disabilities Act Claim

Although TDCJ does not contest that it has waived its immunity
from Plaintiffs' RA claim, TDCJ does maintain that it is entitled
to immunity on Plaintiffs' claim under Title II of the ADA.
Plaintiffs, on the other hand, argue that summary judgment is
inappropriate on this ground because Congress has abrogated TDCJ's
immunity from claims under the ADA.  (Pls.' Resp. at 10.)

In this case, however, it is unnecessary to decide whether
TDCJ is entitled to immunity from Plaintiff's ADA claim because the
Fifth Circuit has held that Plaintiffs' ADA claim is identical to,
and duplicative of, their RA claim.   See Bennett-Nelson v.

Louisiana Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005).  In
Bennet-Nelson, the Fifth Circuit addressed a case where, as here,
several plaintiffs brought claims under both the RA and ADA,
alleging that the defendant, a university, had failed to provide
them "reasonable accommodations" as required by the two Acts.  Id.
at 450, 455.  After determining that the defendant had "waived its
immunity from suit under § 504 of the Rehabilitation Act by
accepting federal funding," the Bennet-Nelson court turned to the
question of whether Congress had validly abrogated defendant's
immunity under the ADA.  Id. at 449, 453-54.  The court concluded
that "[b]ecause Louisiana has waived its sovereign immunity from
actions under § 504 of the Rehabilitation Act, we need not address
that question today."  Id. at 454.  The court explained that "the
rights and remedies afforded plaintiffs under Title II of the ADA
are almost entirely duplicative of those provided under § 504 of
the Rehabilitation Act."  Id.; see also Pace, 403 F.3d at 287;
Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) (stating that
the "language of Title II generally tracks the language of Section
504 . . . and Congress' intent was that Title II . . . work in the
same manner as Section 504"); see also 42 U.S.C. § 12133 (stating
that the "remedies, procedures, and rights" of Title II of the ADA
are the same as those set forth in the Rehabilitation Act).

     As the Bennett-Nelson court noted, "[t]he only material
difference between the two [statutes] lies in their respective
causation requirements."  Bennett-Nelson, 431 F.3d at 454.  The

court held, however, that this difference between the statutes is "immaterial" where the plaintiff's claim is based on the defendant's alleged-failure "to make reasonable accommodations for disabled individuals" because "[w]here a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." Id. at 454-55. The court elaborated:

> In the instant case, there is no question that the complaint claims the University's failure to provide the demanded accommodations is the sole cause of the alleged denial of benefits to the plaintiffs. That is to say, the plaintiffs claim that they were excluded from participation in their classes precisely to the extent that they were not accommodated with interpreters or note takers. The question here is not whether or to what extent the plaintiffs suffer a disability under the ADA; nor is the question whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants. The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether, under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it. In short, causation is not the issue in the appeal presented today.

Id. at 455. Therefore, the Bennett-Nelson court concluded that, "having already held that sovereign immunity does not bar the appellants' claim under § 504, we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case." Id.

The holding of Bennett-Nelson applies with equal force to the instant case. As in Bennett-Nelson, Plaintiffs here are alleging

that TDCJ violated the ADA and RA solely by "refus[ing] to reasonably accommodate Mr. Burrell's disability" in a number of ways.  (SAC at ¶¶ 23-25; Pls.' Mot. Sum. Judg. ("PMSJ") at 1-2.) Where a claim is based on the failure to provide reasonable accommodations, the ADA and RA are identical in scope.  Therefore, the question of whether Congress has abrogated TDCJ's immunity from Plaintiffs' ADA claim is moot.  Accordingly, Defendant TDCJ's motion for summary judgment based on immunity is DENIED.

### 2.   Standing

Defendant TDCJ claims that summary judgment is also appropriate because Plaintiffs L. J. McCoy and Antonio Thompson do not have "standing" to bring this action for the alleged-violation of Burrell's rights under the ADA and RA.  (DMSJ at 3; see also D.E. 77.)[4]  In support of its argument, TDCJ cites 42 U.S.C. § 1988, which incorporates state law "to fill the gaps in administration of civil rights suits" so long as state law is "not inconsistent with the Constitution and laws of the United States." See Pluet v. Frasier, 355 F.3d 381, 383 (5th Cir. 2004); 42 U.S.C. § 1988(a).  If 42 U.S.C. § 1988 applies, then "a party must have standing under the [Texas] state wrongful death or survival

_____

[4] On June 27, 2006, TDCJ filed a "Motion to Submit Additional Briefing on the Issue of Standing."  (See D.E. 77, 82.)  Because TDCJ raised the issue of standing in their original motion for summary judgment (DMSJ at 3), TDCJ's motion to submit additional briefing on this issue (D.E. 82) is GRANTED and the Court will consider the arguments raised in the additional briefing.  Plaintiffs' Motion to Strike (D.E. 87) the additional briefing is DENIED.

statutes" in order to bring a claim asserting the rights of a deceased person.  See Pluet, 355 F.3d at 383-84; see also Rhyne v. Henderson County, 973 F.2d 386, 390-91 (5th Cir. 1992) (finding that standing under Texas wrongful death and survival statutes is incorporated into the Federal Civil Rights Statutes).  TDCJ contends that neither L. J. McCoy (Burrell's grandmother) or Antonio Thompson (Burrell's brother) are entitled to bring a claim regarding Burrell's death under the Texas survival or wrongful death statutes and, therefore, this action must be dismissed for lack of standing.  See Tex. Civ. Prac. & Rem. Code § 71.004(a) (limiting wrongful death actions to the "surviving spouse, children, and parents of the deceased"); Tex. Civ. Prac. & Rem. Code § 71.021 (stating that a survival cause of action exists only "in favor of the heirs, legal representatives, and estate of the [deceased] person").

TDCJ's standing argument is unpersuasive, however, because the issue of "standing" under the ADA and RA is not governed by the terms of § 1988 or Texas law.  Although § 1988 incorporates state law on the issue of standing for suits under 42 U.S.C. §§ 1981 and 1983, see Pluet, 355 F.3d at 383, the Fifth Circuit has never applied § 1988 to impose state law standing requirements to suits under the ADA and RA.  Rather, courts have held that the ADA and RA contain their own, much broader, standing provisions:

> § 12133, [the] ADA's public entity enforcement provision, states that the statute extends its remedies to *any*

> *person* alleging discrimination on the basis of disability. Similarly, the Rehabilitation Act protects *any person aggrieved* by the discrimination of a person on the basis of his or her disability. . . . [S]uch broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action as broadly as is permitted by Article III of the Constitution.

MX Group, Inc. v. City of Covington, 293 F.3d 326, 334 (6th Cir. 2002) (emphasis supplied) (citations and internal quotes omitted) (citing Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 43 (2d Cir. 1997)); see also Liberty Res., Inc. v. Se. Pennsylvania Transp. Auth., 155 F.Supp.2d 242, 249 (E.D. Pa. 2001) ("[T]he enforcement provision of the ADA . . . broadly refers to any person, not solely [the] disabled individual[]"). In defining standing as broadly as permitted by the Constitution, the statutes thus eliminate any prudential barriers to standing and allow plaintiffs to assert the rights of third-parties, such as Burrell, regardless of whether the plaintiffs meet the requirements of the Texas survival and wrongful death statutes. See MX Group, 293 F.3d at 332-35; Clark v. McDonald's Corp., 213 F.R.D. 198, 209 (D.N.J. 2003) (stating that the statutory language "evince[s] a congressional intention to define standing to bring a private action as broadly as is permitted by Article III of the Constitution, thus removing prudential barriers to standing"); Ass'n of Cmty. Orgs. for Reform Now v. Fowler, 178 F.3d 350, 363 (5th Cir. 1999) (stating that Congress "can modify or even abrogate prudential standing requirements" such as the general bar on

plaintiffs asserting "the legal rights and interests of third parties"). Because the ADA and RA contain these broad standing provisions, § 1988's residual incorporation of state law does not apply, and TDCJ's motion for summary judgment based on standing is DENIED.[5]

### 3.   Duties Under the Rehabilitation Act and ADA

Defendant TDCJ's final argument in support of summary judgment is that it cannot be held liable under the ADA or RA because Burrell did not "request an accommodation" for his alleged-disability. (See DMSJ at 8-10; Reply at 2-3.)  In particular, TDCJ argues that, under the statutes, "[p]rison officials need not anticipate an inmate's unarticulated need for [an] accommodation or . . . offer an accommodation sua sponte; the inmate must provide evidence of his disability and the severity of the physical limitations resulting from it, and he must request an accommodation." (DMSJ at 9.)  Plaintiffs, on the other hand, argue that the ADA and RA do not require a specific request for an accommodation and, in any case, Burrell did request accommodations from TDCJ. (Pls.' Resp. at 8-10.)

The ADA and RA provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from

---

[5] TDCJ's standing argument might have merit with respect to claims brought under 42 U.S.C. § 1983.  TDCJ's motion for summary judgment, however, did not address any of Plaintiffs' § 1983 claims.  Rather, the motion was brought only "on [Plaintiffs'] ADA and Rehabilitation Act Claims."  (See DMSJ at 1.)

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; see also 29 U.S.C. § 794(a).  Disability "discrimination" under the statutes, however, "differs from discrimination in the constitutional sense" because the ADA and RA statutes contain their own definitions of discrimination.  Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 672 (5th Cir. 2004).  For example, discrimination may include a defendant's failure to make reasonable accommodations to the needs of a disabled person.  See Id. (under Title II of the ADA "public entities generally are required . . . to make reasonable modifications to avoid discrimination on the basis of disability"); see also Tennessee v. Lane, 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003) (discussing claims of discrimination based on failure to make a "reasonable accommodation"); Swenson v. Lincoln County School Dist. No. 2, 260 F.Supp.2d 1136, 1144 (D. Wyo. 2003) (stating that the "[t]hree theories of discrimination" under the statutes are "(1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification").  In the prison context, for example, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of

-16-

an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.[6]  See United States v. Georgia, — U.S. —, 126 S.Ct. 877, 880-81 (2006) (allegations, if true, that defendant refused to provide reasonable accommodations to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification").

Defendant TDCJ is correct, however, that the accommodation provisions of the ADA and RA do not require public entities to "guess" an individual's need for an accommodation.  See, e.g., Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999); Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 69 (3d Cir. 1996) (stating that a defendant is not "expected to accommodate disabilities of which it is unaware"); Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 934 (7th Cir. 1995) (stating that the "ADA does not require clairvoyance").  Rather, the general rule in cases under the RA, and both Titles I and II of the ADA, is that a plaintiff must show "that the [defendant] knew not only of the

_____

[6] As one commentator noted: "[t]o provide reasonable accommodation to prevent prisoners with disabilities from enduring more punishment than non-disabled prisoners is not special treatment.  For example, a bilateral amputee inmate claimed that because there were no handrails in the shower and toilet area, he repeatedly fell and hurt himself while trying to use the facilities.  To provide accommodations to remedy this problem only ensures that the disabled prisoner does not suffer psychologically or physically more than non-disabled prisoners." Emily Alexander, The Americans With Disabilities Act and State Prisons: A Question of Statutory Interpretation, 66 Fordham L. Rev. 2233, 2283 (1998).

[individual's] disability, but also of the physical or mental limitations resulting therefrom." <u>See</u> <u>Seaman v. CPSH, Inc.</u>, 179 F.3d 297, 300 (5th Cir. 1999); <u>Gammage v. West Jasper School Bd.</u>, 179 F.3d 952, 954 (5th Cir. 1999). "Because an [individual's] disability and concomitant need for accommodation are often not known to the [defendant] until the [individual] requests an accommodation, the ADA's reasonable accommodation requirement *usually* does not apply unless triggered by a request from the [individual]." <u>Reed v. LePage Bakeries, Inc.</u>, 244 F.3d 254, 261 (1st Cir. 2001) (emphasis supplied). A disabled person's failure to expressly "request" an accommodation, however, is not fatal to an ADA claim where the defendant otherwise had knowledge of an individual's disability and needs, but took no action. <u>See</u>, <u>e.g.</u>, <u>Id.</u> at 261 n.7 (noting that a request for accommodation may not be required, for example, where the disabled individual's needs are "obvious"); <u>Chisolm v. McManimon</u>, 275 F.3d 315, 330 (3d Cir. 2001) (reversing a district court's holding that a request for accommodation was necessary, where the public entity "had knowledge of [plaintiff's] hearing disability but failed to discuss related issues with him") (citing <u>Randolph</u>, 170 F.3d at 858-59); <u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 165 (5th Cir. 1996) (noting that the disabled individual's burden to request an accommodation applies "[w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open,

-18-

obvious, and apparent"); <u>Felix v. New York City Transit Authority</u>, 154 F.Supp.2d 640, 657 (S.D.N.Y. 2001) (the general requirement of a request "is rooted in common sense. Obviously, an employer who acts or fails to act without knowledge of a disability cannot be said to have discriminated based on that disability . . . [but this] concern[ is] not relevant when an employer has independent knowledge of an [individual's] disability. The rule requiring a request for accommodation can be ignored in such circumstances"); <u>Walsted v. Woodbury County</u>, 113 F.Supp.2d 1318, 1336 (N.D. Iowa 2000) ("if an [individual's] disability and the need to accommodate it are obvious, [the individual] is not required to expressly request reasonable accommodation"); <u>Campbell v. Wal-Mart Stores, Inc.</u>, 272 F.Supp.2d 1276, 1289 (N.D. Okla. 2003) (same); <u>Rosso v. PI Management Associates, L.L.C.</u>, 2005 WL 3535060 at *11 (S.D.N.Y. Dec. 23, 2005) (unpublished) (the requirement of a request "may be waived where the plaintiff's disability is obvious or otherwise known to the [defendant] without notice from the [plaintiff]").

In this case, Burrell was not necessarily required to request an accommodation because Plaintiffs have evidence tending to show that TDCJ was on notice of Burrell's alleged disability and that Burrell's need for an accommodation was obvious. For example, Plaintiffs have evidence that TDCJ and its officials were aware of Burrell's asthmatic condition. (PE 3 at 1; <u>see also</u> DE1 A; PE A; B; H.) Courts have held that "[i]t is common knowledge that a respiratory ailment, such as asthma, can be serious and life-

-19-

threatening." See, e.g., Whitley v. westchester County, 1997 WL 659100 at *4 (S.D.N.Y. Oct. 22, 1997) (unpublished) (quoting Garvin v. Armstrong, 1998 WL 547117 at *2 (N.D. Ill. Aug. 20, 1998) (unpublished)); see also Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005) ("asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks"); Felton v. Godinez, 1996 WL 137645 at *4 (N.D. Ill. Mar. 25, 1996) (unpublished) ("Attacks of asthma . . . are rarely fatal, but they can possibly result in serious injury or death"); Ware v. Fairman, 884 F.Supp. 1201, 1206 (N.D. Ill. 1995) (stating that "asthma is a serious illness which requires an inhaler"). Plaintiffs also have evidence tending to show that TDCJ knew that Burrell had been prescribed asthma medications and that he required two different types of inhalers to control his asthma. (PE 3 at 1; 4 at 1; 5 at 1-2; 27 at ¶¶ 10, 12-13; see also DE1 A.) Finally, Plaintiffs have evidence that TDCJ and its officers knew that the conditions of administrative segregation might pose risks to asthmatic inmates because prison officials had received complaints from Burrell and other inmates that the administrative segregation unit was excessively hot and had poor ventilation. (PE 1 at ¶ 6; 7 at 1-2; M at ¶ 15.)   In fact, there is evidence that Burrell himself advised TDCJ officers that he was having trouble breathing while housed in administrative segregation. (PE M at ¶ 15.) Burrell also complained of suffering at least one asthma attack, and was observed wheezing, in the month before his death. (DE1 A.)

-20-

Viewing this evidence in the light most favorable to the Plaintiffs, a jury could find that TDCJ had sufficient knowledge of Burrell's disability, and the dangers posed by housing him in the administrative segregation unit, that it was required to take steps to accommodate him regardless of whether Burrell expressly requested a specific accommodation.

Furthermore, even if TDCJ is correct that Burrell was required to request an accommodation in order to invoke the ADA and RA, it still is not entitled to summary judgment. Plaintiffs have some evidence from which a jury could find that Burrell *did* in fact request certain accommodations from TDCJ and its officials. For example, on July 23, 2004, nine days before Burrell's death, prison officials noted that he had "requested [an] asthma inhaler."[7] (PE D; Q at 2; DE1 D at 2.) Similarly, Plaintiffs have evidence that, on July 25, 2005, seven days before Burrell's death, he "told [Capt. Ambriz] that he was having trouble breathing because of his asthma. Capt. Ambriz told Mr. Burrell that he would go try to improve the ventilation." (PE M at ¶ 15.) Finally, a reasonable jury could also find that Burrell "requested" immediate medical

---

[7] It is unclear from this evidence whether Burrell was requesting a "rescue" (Albuterol) inhaler or a "controller" (Azmacort) inhaler when he made this request from prison officials. There is evidence that Burrell had been issued a "rescue" inhaler by prison officials approximately two weeks earlier (DE1 A), and TDCJ also has evidence that a "rescue" inhaler was found in Burrell's cell after his death. (DE1 D at 2.) Because there is evidence suggesting that Burrell already had a "rescue" inhaler in his possession, a jury could reasonably infer that Burrell was requesting a "controller" inhaler.

attention or immediate transportation to a medical facility when, on the day of his death, he informed prison guards that he was having an asthma attack.  (PE 14 at 20, 39; M at ¶¶ 3-4.)  Viewing this evidence in the light most favorable to the Plaintiff, a jury could find that Burrell requested certain accommodations for his disability from TDCJ.   Therefore, TDCJ's motion for summary judgment on Plaintiffs' ADA and RA claims is DENIED.

### C.   Plaintiffs' Motion for Summary Judgment

In their motion for partial summary judgment, Plaintiffs claim that there is no genuine issue of material fact regarding Defendant TDCJ's liability under the RA and ADA.   (PMSJ at 1.)   Because Plaintiffs are moving for summary judgment on claims for which they bear the burden of proof, they must establish "beyond peradventure" every element of their claims in order for summary judgment in their favor to be appropriate.  See Fontenot, 780 F.2d at 1194.  In other words, a plaintiff "cannot attain summary judgment unless the evidence that [she] provides on [her claims] is *conclusive*." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) (emphasis supplied).  A plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the [plaintiff]," otherwise summary judgment cannot be granted.  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).  Plaintiffs have not met this heavy burden in this case, however, because the Court finds that they have not *conclusively*

established that TDCJ failed to provide Burrell with "reasonable accommodations."[8]

Assuming, without deciding, that Plaintiffs could conclusively establish all the other elements of their ADA and RA claims, they still must prove that TDCJ failed to provide Burrell with reasonable accommodations. Whether an accommodation is "reasonable" requires a balancing of all the relevant facts, including: (1) the size, facilities, and resources of the defendant, (2) the nature and cost of an accommodation, (3) the extent to which the accommodation is effective in overcoming the

_____

[8] Plaintiffs, in their motion for partial summary judgment, read United States v. Georgia, — U.S. —, 126 S.Ct. 877 (2006) to mean that "Defendants violate the ADA and Rehabilitation Act when their actions would also violate the Eighth Amendment right to be free of cruel and unusual punishment." (PMSJ at 4.) Thus, Plaintiffs argue that, if they "can prove that Mr. Burrell's Eighth Amendment rights were violated, they have also proved that a violation of the ADA took place." (PMSJ at 4.) Plaintiffs argument is unpersuasive, however, because it rests on a fundamental misreading of the Georgia case. The Georgia case stands only for the proposition that a state is *not immune* under the ADA when the conduct which violates the ADA also violates the Eighth Amendment. Id. at 882. Georgia does not stand for the proposition that every Eighth Amendment violation is also a *per se* violation of the ADA. Although there may be some overlap between the requirements of the Eighth Amendment and the ADA, the substantive standards of each are different. See, e.g., Delano-Pyle v. Victoria County, 302 F.3d 567, 575 (5th Cir. 2002) (noting differences between constitutional claims and the ADA, including the fact that "[t]here is no 'deliberate indifference' standard applicable to public entities for purposes of the ADA or the RA"). Therefore, Plaintiffs cannot establish an ADA and RA violation merely by showing that the Eighth Amendment was violated. Accordingly, Plaintiffs' discussion of the Eighth Amendment in their motion for partial summary judgment is largely immaterial.

effects of the disability, and (4) whether the accommodation would require a fundamental alteration in the nature of the defendant's program.  See, e.g., 45 C.F.R. § 84.12(c)(1-3); School Bd. of Nassau County v. Arline, 480 U.S. 273, 288 n.17 (1987); Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1386 (3d Cir. 1991).  As such, the reasonableness of an accommodation is generally a question of fact inappropriate for resolution on summary judgment.  See, e.g., Buskirk v. Apollo Metals, 307 F.3d 160, 170-71 (3d Cir. 2002) ("Generally, the question of whether a proposed accommodation is reasonable is a question of fact"); Chisolm, 275 F.3d at 327 ("[g]enerally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment"); Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999) ("the question of whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis"); Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 784 (7th Cir. 2002) ("Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties"); Niece v. Fitzner, 922 F.Supp. 1208, 1218 (E.D. Mich. 1996) (the "reasonableness of an accommodation under the ADA is a question of fact appropriate for resolution by the trier of fact"); EEOC v. Dresser-Rand Co., 2006 WL 1994792 at *3 (W.D.N.Y. July 14, 2006) (unpublished) ("Whether or not an accommodation is reasonable, however, is generally a question of fact for the trier of fact

-24-

. . . [because t]he trier of fact is in the best position to weigh [all the relevant] considerations").

Summary judgment is particularly inappropriate where, as here, Defendant TDCJ has some evidence that the accommodations cited by Plaintiffs are unreasonable.  For example, Plaintiffs allege that TDCJ should have accommodated Burrell with housing outside of the Administrative Segregation unit.  (PMSJ at 1.)  TDCJ, however, has evidence that alternative housing would not have been appropriate. The Administrative Segregation unit is a special unit of the prison used to house inmates who are particularly dangerous or believed to be a security risk.  (DE1 C at 1-32.)  Prisoners in Level III administrative segregation, for example, have "a very extensive assaultive history" and are deemed a threat to other offenders or TDCJ officers.  (DE2 B at 78.)  With respect to Burrell in particular, Defendant has evidence that he was a known gang member. (See DE2 B at 79.)  Plaintiffs have not conclusively shown that there was a reasonable alternative to housing Burrell in Administrative Segregation, taking into account TDCJ's security concerns.  Similarly, Plaintiffs allege that prison guards should have accommodated Burrell by transporting him out of his cell immediately upon being informed of his asthma attack.  (PMSJ at 1.) Defendant TDCJ, however, has provided evidence that transporting Burrell out of his cell immediately would not have been reasonable. TDCJ has evidence that it is a "usual occurrence" for prisoners in administrative segregation to fake an illness in order to trick the

guards.   (DE2 F at 2; B at 78-79.)   Furthermore, Defendants have evidence showing they had reason to believe, albeit erroneously, that Burrell might be faking his illness because he appeared to be breathing and was lying in way that he could be hiding a weapon. (DE2 C at 39-41 D at 54-55.)   In sum, Plaintiffs have not proven that the accommodations they request are such that the fact-finder would be compelled to find them reasonable.  Therefore, Plaintiffs' motion for partial summary judgment against TDCJ must be DENIED. Because the Plaintiffs have not conclusively established an essential element of their claim, the Court need not address whether Plaintiffs have met the other elements of their ADA and RA claims, such as whether Burrell had a "disability" within the meaning of the statutes, and whether TDCJ knew of Burrell's need for particular accommodations.

## IV.   CONCLUSION

For the reasons discussed above, Defendant TDCJ's Motion for Summary Judgment (D.E. 47) and Plaintiffs' Motion for Partial Summary Judgment (D.E. 88, 90) are both DENIED.

SIGNED and ENTERED this 9th day of August, 2006.

_____
Janis Graham Jack
United States District Judge

-26-