IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| L.J. MCCOY and ANTONIO V. THOMPSON, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-370 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant Rhonda Cubbage's Motion for Summary Judgment (D.E. 85). For the reasons stated below, Defendant Cubbage's motion is DENIED.

## I.   JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

On July 27, 2005, Plaintiffs L. J. McCoy and Antonio Thompson (collectively "Plaintiffs") filed suit in this Court against the Texas Department of Criminal Justice ("TDCJ"), TDCJ's executive director Brad Livingston, and several individual TDCJ officers and employees, including Nurse Rhonda Cubbage ("Defendant Cubbage"). (D.E. 1, 8, 17, 31.) Plaintiffs sued the Defendants on behalf of Micah Burrell, deceased, alleging that Defendants caused Burrell's death and violated his rights under the Eighth Amendment, the Americans with Disabilities Act, § 504 of the Rehabilitation Act,

and Chapter 121 of the Texas Human Resources Code. (Pls.' Sec. Am. Compl. ("SAC") at ¶¶ 1-9.)   Plaintiffs sued Defendant Cubbage, however, only in her individual capacity pursuant to 42 U.S.C. § 1983 for allegedly violating Burrell's Eighth Amendment rights. (See D.E. 31.)  On July 11, 2006, Defendant Cubbage filed a Motion for Summary Judgment on Plaintiffs' § 1983 claim against her. (D.E. 85.)   On July 31, 2006, Plaintiffs filed a response to Defendant Cubbage's motion.   (D.E. 93.)   Finally, on August 7, 2006, Defendant Cubbage filed a reply to the Plaintiffs' response.[1] (D.E. 95.)  The following facts are not in dispute:

In August 2004, Burrell was a prisoner in the custody of the TDCJ and incarcerated in "Administrative Segregation" at the McConnell Unit in Beeville, Texas.  (Pls.'s Ex. ("PE2")[2] 1 at ¶ 5; PE3 Q at 1.)  At that time, Defendant Cubbage was a registered nurse working at the medical infirmary in the McConnell Unit.  (PE1

---

[1] On August 17, 2006, Plaintiffs filed a "Motion for Leave to File a Surreply" to Defendant Cubbage's motion for summary judgment, arguing that a sur-reply is appropriate because "[i]n her reply, Cubbage cites new caselaw and makes additional arguments not contained in her motion." (D.E. 102.) Courts have held, however, that a "sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." Murray v. TXU Corp., C.A. 03-0888P, 2005 WL 1313412 at *4 (N.D. Tex. 2005). The mere fact that the movant cites new cases and makes new "arguments" is not alone sufficient. See Id. Therefore, Plaintiffs' "Motion for Leave to File a Surreply" is DENIED.

[2] For the purposes of this summary judgment order, "PE1" refers to Plaintiffs' exhibits "A" through "L" attached to Docket Entry 93.  "PE2" refers to Plaintiffs' exhibits "1" through "28" attached to Docket Entry 90.  "PE3" refers to Plaintiffs' exhibits "A" through "T" attached to Docket Entry 58.

E at 1.)  On August 1, 2004, Defendant Cubbage was in the prison medical department when a call came in to the infirmary indicating that Burrell was having an asthma attack and needed medical assistance.  (PE1 C at 1; E at 2.)  At some point after the call, Defendant Cubbage and several other TDCJ employees, including Lt. Annmarie De La Rosa, proceeded to Burrell's cell.  (PE1 C at 1; E at 2; PE3 Q at 1.)  When they arrived at the cell, Defendant Cubbage and the TDCJ officers found Burrell lying on his bunk. (PE1 E at 2.)  Burrell did not respond to verbal calls from the officers.  (PE1 E at 2-3.)  When Burrell's cell door was opened, he was restrained and transported to the prison medical center by stretcher.  (PE3 Q at 1; PE1 C at 2.)  At the prison medical center, Burrell was not breathing and did not have a pulse.  (PE3 Q at 2; R at 1.)  An ambulance was called and transported Burrell to Christus Spohn Hospital in Bee County, Texas where he was pronounced dead at 3:50 PM.  (PE3 Q at 2; R at 1.)  An autopsy conducted by Pathologist Gerald A. Campbell concluded that "the immediate cause of death . . . [was] respiratory failure secondary to a combination of asthmatic episode and aspiration of gastric material."  (PE3 Q at 3.)

**III.  DISCUSSION**

    **A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [her] motion, and identifying those portions of [the record] which [she] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge her burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried her burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities

-4-

Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).  The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts.  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]."  Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).  "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the

-5-

evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).  If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.   Qualified Immunity**

Defendant Cubbage may be shielded from liability for civil damages under § 1983 if her actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  See, e.g., Hope v. Pelzer, 536 U.S. 730, 739 (2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Qualified immunity operates to ensure that, before officials are subjected to suit, they are on notice that their conduct is unlawful.  See Saucier v. Katz, 533 U.S. 194, 206 (2001).  The qualified immunity determination involves a two-step analysis. Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004).  First, a court must determine whether a "constitutional right would have been violated on the facts alleged." Id. (citing Saucier, 533 U.S. at 200).  Second, the court must determine whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (citing Hope, 536 U.S. at 739).  If, viewing the evidence in the light most favorable to the plaintiff,

"reasonable public officials could differ on the lawfulness of the defendant's actions, then that defendant is entitled to qualified immunity." <u>Haggerty v. Texas Southern University</u>, 391 F.3d 653, 655 (5th Cir. 2004); <u>see also</u> <u>Southard v. Texas Bd. of Criminal Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997).

### C.   Deliberate Indifference to Serious Medical Needs

#### 1.   Step 1: Violation of a Constitutional Right

Plaintiffs claim that Defendant Cubbage violated Burrell's Eighth Amendment right to adequate medical care.  It is well-settled that "[t]he Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners." <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  In order to hold a prison official liable for denial of medical treatment, a plaintiff must show (1) "objectively that he was exposed to a substantial risk of serious harm;" (2) that prison "officials were actually aware of the risk;" and (3) that prison "officials acted or failed to act with deliberate indifference to that risk." <u>Id</u>. (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837 (1994)).  "Deliberate indifference is an extremely high standard to meet" and encompasses only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." <u>See</u>, <u>e.g.</u>, <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001); <u>McCormick v. Stalder</u>, 105 F.3d 1059,

-7-

1061 (5th Cir. 1997).  An official's "failure to alleviate a significant risk that [she] should have perceived, but did not is insufficient to show deliberate indifference." <u>Domino</u>, 239 F.3d at 756; <u>see</u> <u>also</u> <u>Hare v. City of Corinth</u>, 74 F.3d 633, 648 (5th Cir, 1996).  It is also well-settled that negligent medical care does not constitute a valid claim under the Eighth Amendment.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993).  Rather, a prisoner's constitutional rights are violated only if "jail officials were actually aware of the risk [to the prisoner], yet consciously disregarded it." <u>Lawson</u>, 286 F.3d at 262; <u>see</u> <u>also</u> <u>Self v. Crum</u>, 439 F.3d 1227, 1231 (10th Cir. 2006).

In this case, there is no dispute that Burrell was exposed to a substantial risk of serious harm when he suffered the ultimately-fatal asthma attack in his cell.  The only dispute is whether Plaintiffs have evidence from which a reasonable jury could find that Defendant Cubbage (1) was subjectively aware of that risk, and (2) responded to that risk with deliberate indifference.

### a.   Knowledge of a Substantial Risk

The question of whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 (1994).  For example, "a factfinder may conclude that a prison

official knew of a substantial risk from the very fact that the
risk was obvious." Id.; see also United States v. Gonzales, 436
F.3d 560, 573-74 (5th Cir. 2006). "[A]n Eighth Amendment claimant
need not show that a prison official acted or failed to act
believing that harm actually would befall an inmate; it is enough
that the official acted or failed to act despite his knowledge of
a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In this case, Plaintiffs have circumstantial evidence
supporting an inference that Defendant Cubbage knew Burrell was
exposed to a substantial risk of serious harm. Plaintiffs'
evidence shows that, sometime around 12:50 PM, Burrell informed
neighboring inmates that he was having an asthma attack. (PE1 A at
¶¶ 3-4; D at ¶ 3.) When Officer Benavides arrived at the cell in
response to the calls for help, Burrell also informed him that he
was suffering an asthma attack. (PE2 14 at 20.) Officer Benavides
then left the cell, but another inmate heard Burrell continuing to
suffer the asthma attack:

> I could hear that Mr. Burrell was in trouble. It sounded
> like he was having convulsions. I could hear him shaking
> hard and having great difficulty breathing. I heard a
> loud thud come from his cell. I asked Mr. Burrell if he
> was ok, but he didn't answer. I heard Mr. Burrell
> gasping for air.

(PE1 A at ¶ 6.) When other inmates and guards subsequently tried
to communicate with Burrell, they found him lying on his back and
was not responding to calls. (See, e.g., PE1 A at ¶¶ 6, 8, 9-10;
C at 1; D at ¶¶ 4-5.) One guard observed Burrell continuously for

five to ten minutes while waiting for a supervisor and medical assistance to arrive, and did not see any movement or change on the part of Burrell.  (See PE3 G.)  Although Burrell's appearance at the time Defendant Cubbage arrived at the cell is unclear, at least one inmate observed Burrell when he was brought out of his cell and stated that he "could see Mr. Burrell laying [sic] on the ground, and he didn't seem to be breathing."  (PE A at ¶ 13.)  Plaintiffs also have evidence that Burrell had a "dusky," or "blue," coloration and "agonal breathing."[3]  (PE1 E at 3; G at 16; K at 1.) Additionally, Plaintiffs' evidence shows that Defendant Cubbage, at least once, observed Burrell "gasp[ing] for air."  (PE1 J at 119-20.)  A jury could find from this evidence that Burrell was exhibiting symptoms so severe that it was obvious, under the circumstances, that he had a serious medical need that required emergency attention.  (See PE1 L at ¶ 10.)  Therefore, the jury

---

[3] Defendant Cubbage claims she was unable to observe Burrell's breathing and coloration until after he was brought out of the cell because the lighting in the cell was "dim" and Burrell "was lying on his bunk face down with his knees on the floor."  (PE1 D at 2.)  There is evidence, however, contradicting this assertion and showing that Defendant Cubbage was able to observe Burrell's condition while he was still in the cell.  For example, contrary to Defendant Cubbage's assertion, several of the officers testified that Burrell was lying face-up on his bunk and that they could see his hands and observe his breathing. (See, e.g., Perez Depo. at 40-41, attached as Ex. C to D.E. 67.) Furthermore, Plaintiffs also have evidence that several officers overheard Defendant Cubbage say to someone on the phone that, "*when she got to the cell*, the inmate was blue."  (PE1 G at 16; J at 103-04.)  Therefore, a jury could infer that Defendant Cubbage was able to observe Burrell's symptoms even before Burrell was brought out of his cell, and thus had knowledge of his serious medical needs at that time.

could infer that Defendant Cubbage had the requisite subjective knowledge of Burrell's needs.

### b.   Deliberate Indifference

Plaintiffs must also show that Defendant Cubbage responded to Burrell's needs with deliberate indifference. Deliberate indifference requires a plaintiff to show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gonzales, 436 F.3d at 575; see also Domino, 239 F.3d at 756. Deliberate indifference encompasses only the "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick, 105 F.3d at 1061. In Fielder v. Bosshard, 590 F.2d 105 (5th Cir. 1979), the Fifth Circuit addressed the issue of deliberate indifference in a case in which a prisoner asked jailers for medical attention for delirium tremens. The prisoner had severe symptoms, including mumbling incoherently and waving his arms, but jailers nevertheless refused to treat him and accused him of "faking," "joking," and "putting on." Id. at 108. The prisoner eventually died. Id. The Fifth Circuit affirmed a jury's finding of deliberate indifference, stating that:

> both the severity of the apparent illness and the [jailers'] off-hand, callous comments with respect to [the prisoner's] welfare belie the theory that they merely misdiagnosed a prisoner's sickness. There is a vast difference between an earnest, albeit unsuccessful attempt to care for a prisoner and a cold hearted, casual

unwillingness to investigate what can be done for a man who is obviously in desperate need of help.

Id. The Fifth Circuit went on to hold that the prisoner's evidence was sufficient, both "to support the jury's verdict" and to "negate the [jail officers'] qualified immunity." Id. at 108-10; see also Gonzales, 436 F.3d at 574 (finding sufficient evidence of deliberate indifference in part because officers taunted and mocked a prisoner in need); Odom v. S. Carolina Dep't of Corr., 349 F.3d 765, 768-72 (4th Cir. 2003) (evidence that officers laughed, mocked, and made callous remarks to a prisoner in danger supported a finding of deliberate indifference).

In this case, Plaintiffs have evidence that Defendant Cubbage responded with deliberate indifference to Burrell's serious medical needs. Viewing the evidence in the light most favorable to the Plaintiffs, a jury could find that the guards notified the medical department that Burrell was having an asthma attack as early as 1:00 or 1:15 PM.[4] Lt. De La Rosa was in the medical department when a call came in regarding Burrell's asthma attack. (PE1 C at

---

[4] One inmate testified that Burrell began having an asthma attack around 12:50 PM and that Officer Benavides arrived at the cell approximately "seven minutes later." (PE1 A at ¶¶ 3-4.) Officer Benavides, on the other hand, claimed he arrived at Burrell's cell around 1:15 PM. (PE2 15.) In any case, Officer Benavides claims that he immediately asked another officer to call for medical assistance. (See PE2 14 at 20-23.) Believing this evidence, a jury could therefore infer that medical was called somewhere between 1:00 PM and 1:15 PM. Although Defendant Cubbage has evidence that the medical department was not notified of the asthma attack until approximately 1:30 PM, (PE1 E at 2), the Court must view the evidence in the light most favorable to the Plaintiffs for the purposes of summary judgment.

1.)  She testified that, upon receiving the call:

> Sgt. Sanchez immediately left the medical department and
> went to [Burrell's cell] . . . [but] I did not see anyone
> from the medical department respond to the call for
> assistance.  I asked whether anyone from medical was
> going, and specifically asked "have you ever seen someone
> have an asthma attack, they tend to panic."  UTMB nurse
> Rhonda Cubbage responded "Yea, right, there's nothing
> wrong with him, you won't die from an asthma attack."  I
> then called the F pod, and the officers in the F pod told
> me they could not tell, medically, whether the inmate was
> having an asthma attack.  I again urged someone, anyone
> from the medical department to respond to the call.

(PE1 C at 1.)  Plaintiffs' evidence also shows that, when Sgt.

Sanchez arrived at Burrell's after coming from the medical

department, he had to "call 911 on his radio" because no medical

assistance had yet arrived.  (PE1 A at ¶ 9.)

        At approximately 1:35 PM, Lt. De La Rosa and Defendant Cubbage

also arrived at the cell.  (PE3 Q at 1; PE1 A at ¶¶ 9-10.) One

inmate observed the following at the scene:

> A few minutes later, Lt. De La Rosa and Nurse Cubbage
> arrived at the cell.  They were both yelling at Mr.
> Burrell to come to the door.  Lt. De La Rosa scoffed and
> said "He's faking it."  She taunted Burrell, telling him
> that, "You picked a bad day for this" because "the
> weatherman said it wasn't supposed to be hot today and I
> know its cool in that cell."  Nurse Cubbage also said
> that Mr. Burrell was faking because "if you were having
> an asthma attack your lips would be purple, and they
> aren't purple."  This went on for over ten minutes.

(PE1 A at ¶¶ 10-11.)  Another inmate agreed that Defendant Cubbage

and others mocked Burrell for "over ten minutes" and specifically

heard "Nurse Cubbage ridicul[ing Burrell,] saying 'that's not how

you have an asthma attack, I can see you breathing normal.'"  (PE1

D at ¶ 6.)  Other guards present at the scene testified that

-13-

Defendant Cubbage mentioned several times that Burrell was faking and that she responded to Burrell's gasping for air by saying "[s]ee, you only did that because I said you are faking."  (See, e.g., PE1 J at 118-20; G at 18; H at 16; I at 77.)

Plaintiffs' evidence also shows that Defendant Cubbage made little to no effort to ascertain Burrell's condition and showed no concern for his well-being.  For example, one inmate testified that Defendant Cubbage did not bring any medical supplies to the cell:

> Sgt. Sanchez asked Nurse Cubbage where the gurney was. She said she didn't bring it because she didn't think she would need it.  She didn't bring any other medical equipment either, not even gloves or a stethoscope.

(PE1 A at ¶ 12; see also PE1 G at 17.)[5]  The inmate also stated that, when Burrell was brought out of his cell, Defendant Cubbage did not take any action until an inmate began yelling at her:

> The guards carried him out and put him on the run in front of my cell.  I could see Mr. Burrell laying [sic] on the ground, and he didn't seem to be breathing.  While Burrell was laying [sic] on the floor, the nurse and Lt. De La Rosa kept talking while they were waiting on the gurney.  I yelled at the nurse to do something.  Nurse Cubbage then moved Burrell's head around, and opened his eyes and mouth, but he still didn't respond.

(PE1 A at ¶ 13.)  Furthermore, at least one witness testified that "at no time did medical personnel check Offender Burrell for a pulse" and did not perform CPR on him.  (PE1 H at 20.)  Lt. De La Rosa testified that she "offered the CPR services of myself and my

---

[5] Plaintiffs also have evidence that Defendant Cubbage's failure to bring a gurney possibly resulted in an eight minute delay in transporting Burrell to the medical facilities.  (See PE1 F at 15-16.)

staff to Nurse Cubbage, but she declined, and assured us he was faking." (PE1 C at 1-2.)

A reasonable jury could infer from this evidence that Defendant Cubbage responded with to Burrell's asthma attack with deliberate indifference. Taken together, Plaintiffs' evidence shows that Defendant Cubbage (1) delayed in responding to the emergency and did nothing until Lt. De La Rosa urged her to respond to the call, (2) announced that Burrell was faking before she had even had a chance to observe him, (3) failed to bring a gurney or any supplies to the cell, (4) "ridiculed" Burrell[6] and continued to accuse him of faking despite evidence that she was aware of his severe symptoms, and (5) did not take Burrell's pulse, attempt CPR, or conduct a serious examination of him even after he was taken out of the cell. A jury could infer from these facts that Defendant Cubbage essentially "refused to treat [Burrell], ignored his complaints," and evinced a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help." Gonzales, 436 F.3d at 575; Fielder, 590

---

[6] Defendant Cubbage claims that there is no evidence that she "was joking or laughing in front of Burrell's cell." (Def.'s Reply at 2.) One inmate witness, however, clearly identifies that Defendant Cubbage "ridiculed" Burrell (PE1 D at ¶ 6) and other witnesses state that she made such sarcastic and caustic comments as "[y]ea, right, there's nothing wrong with him", "that's not how you have an asthma attack", and "you only [gasped for air] because I said you are faking." (See, e.g., PE1 C at 1; D at ¶ 6; J at 118-20.) This evidence is just as probative regarding Defendant Cubbage's state of mind as would be evidence that she made jokes or laughed in front of Burrell's cell.

F.2d at 108.   Therefore, viewing the evidence in the light most favorable to the Plaintiffs, a jury could find that Defendant Cubbage violated Burrell's rights under the Eighth Amendment.

### 2.   Step 2: Clearly Established Right

The second step in the qualified immunity analysis requires the Court to consider whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Flores, 381 F.3d at 395.  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).   A defendant is entitled to qualified immunity "so long as [her] actions could reasonably have been thought consistent with the rights [she is] alleged to have violated." Fontenot v. Cormier, 56 F.3d 669, 673 (5th Cir. 1995). The central concern of this step in the analysis is that of "fair warning" to the public official.  Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004); see also Pelzer, 536 U.S. at 740.

At the time of the events giving rise to this case, the Supreme Court and the Fifth Circuit had made clear that "[t]he Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners." Lawson, 286 F.3d at 262 (citing Estelle, 429 U.S. at

-16-

104); <u>see</u> <u>also</u> <u>Farmer</u>, 511 U.S. at 837-39.  Furthermore, it was well-settled that an officer who ridicules and refuses to treat a prisoner in obvious need of help violates the Eighth Amendment. <u>See</u> <u>Fielder</u>, 590 F.2d at 108.  Therefore, Defendant had "fair warning" and notice that the conduct she is alleged to have engaged in was unlawful and no reasonable officer could have thought such conduct to be consistent with Burrell's rights.  Accordingly, Plaintiffs have met their burden of overcoming qualified immunity on summary judgment and Defendant Cubbage's motion for summary judgment on that ground is DENIED.

## IV.   CONCLUSION

For the reasons discussed above, Defendant Cubbage's Motion for Summary Judgment (D.E. 85) is DENIED.

SIGNED and ENTERED this 21st day of August, 2006.

_____

Janis Graham Jack
United States District Judge

-17-