**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| L.J. MCCOY and ANTONIO V. THOMPSON, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-370 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Plaintiffs' Motion for Summary Judgment against Defendant Juan Benavides. (D.E. 89.) For the reasons stated below, Plaintiffs' motion is DENIED.

## I.  JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND

On July 27, 2005, Plaintiffs L. J. McCoy and Antonio Thompson (collectively "Plaintiffs") filed suit in this Court against the Texas Department of Criminal Justice ("TDCJ"), TDCJ's executive director Brad Livingston, and several individual TDCJ officers and employees, including Juan Benavides ("Defendant Benavides"). (See D.E. 1, 8, 17, 31.)  Plaintiffs sued the Defendants on behalf of Micah Burrell, deceased, alleging that Defendants caused Burrell's death and violated his rights under the Eighth Amendment, the Americans with Disabilities Act, § 504 of the Rehabilitation Act,

and Chapter 121 of the Texas Human Resources Code.  (Pls.' Sec. Am. Compl. ("SAC") at ¶¶ 1-9.)  Plaintiffs sued Defendant Benavides, however, only in his individual capacity pursuant to 42 U.S.C. § 1983 for allegedly violating Burrell's Eighth Amendment rights. (See D.E. 31.)  On July 14, 2006, Plaintiffs filed a Motion for Partial Summary Judgment on their § 1983 claim against Defendant Benavides.  (D.E. 85.)  On August 1, 2006, Defendant Benavides filed a response to Plaintiffs' motion.  (D.E. 94.)  On August 17, 2006, Plaintiffs filed a reply to Defendant Benavides' response. (D.E. 104.)  The following facts are not in dispute:

In August 2004, Burrell was a prisoner in the custody of the TDCJ and incarcerated in "Administrative Segregation" at the McConnell Unit in Beeville, Texas.  (Pls.' Ex. ("PE2")[1] 1 at ¶ 5; PE3 Q at 1.)  At that time, Defendant Benavides was employed as a security officer in the McConnell Unit.  (See PE3 Q at 1; Def.'s Ex ("DE1")[2] A at 15.)  On August 1, 2004, Defendant Benavides was assigned to the "F pod," an area of the Administrative Segregation

---

[1] For the purposes of this summary judgment order, "PE1" refers to Plaintiffs' exhibits "1" through "7" attached to Docket Entry 89.  "PE2" refers to Plaintiffs' exhibits "1" through "28" attached to Docket Entry 90.  "PE3" refers to Plaintiffs' exhibits "A" through "T" attached to Docket Entry 64.  "PE4" refers to Plaintiffs' exhibits "A" through "L" attached to Docket Entry 93.

[2] For the purposes of this summary judgment order, "DE1" refers to the Defendants' exhibits attached to Docket Entry 94. "DE2" refers to the Defendants' exhibits attached to Docket Entry 67.  "DE3" refers to the Defendants' exhibits attached to Docket Entry 85.

unit which included Burrell's cell.  (PE3 Q at 1; DE1 A at 15.)
Sometime in the early afternoon of that day, Defendant Benavides
began to hear unusually-loud yelling coming from the area near
Burrell's cell and walked towards that area to investigate.  (PE1
2 at 20; PE3 M at ¶¶ 3-4; O at ¶ 3.)   When Defendant Benavides
arrived at Burrell's cell, Burrell informed the officer that he was
having an asthma attack.   (PE1 2 at 20.)   Although the parties
dispute whether Defendant Benavides *immediately* called for help, it
is undisputed that a TDCJ officer eventually contacted a supervisor
and medical personnel for assistance.  (See, e.g., PE1 3 at 1; PE4
C at 1.)   After calling for help, Defendant Benavides stayed by
Burrell's cell, leaving only for approximately three minutes.  (PE1
2 at 21-23, 40.)   Eventually, a supervisor, Lt. Annmarie De La
Rosa, and nurse Rhonda Cubbage arrived at the cell.  (PE3 Q at 1;
PE4 C at 1-2.)   When Burrell's cell door was opened, he was
restrained and transported to the prison medical center by
stretcher.   (PE3 Q at 1; PE4 C at 2.)   At the prison medical
center, Burrell was not breathing and did not have a pulse.  (PE3
Q at 2; R at 1.)   An ambulance was called and transported Burrell
to Christus Spohn Hospital in Bee County, Texas, where he was
pronounced dead at 3:50 PM.  (PE3 Q at 2; R at 1.)   An autopsy
conducted by Pathologist Gerald A. Campbell concluded that "the
immediate cause of death . . . [was] respiratory failure secondary
to a combination of asthmatic episode and aspiration of gastric

material."   (PE3 Q at 3.)

## III.   DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."   Fed. R. Civ. P. 56(c).   The substantive law identifies which facts are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).   A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [her] motion, and identifying those portions of [the record] which [she] believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).   If the movant bears the burden of proof on a claim for which she is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* the

essential elements of the claim or defense to warrant judgment in [her] favor." Fontenot v. UpJohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). In other words, a plaintiff "cannot attain summary judgment unless the evidence that [she] provides on [her claims] is conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) (emphasis supplied). A plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the [plaintiff]," otherwise summary judgment cannot be granted. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).

Once the moving party has carried her burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere

existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." <u>Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Willis</u>, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." <u>Byrd v. Roadway Exp., Inc.</u>, 687 F.2d 85, 87 (5th Cir. 1982); <u>Aubrey v. Sch. Bd. of Lafayette</u>, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50.

**B.   Qualified Immunity**

Defendant Benavides may be shielded from liability for civil damages under § 1983 if his actions did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." <u>See</u>, <u>e.g.</u>, <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity operates to ensure that, before officials are subjected to suit, they are on notice that their conduct is unlawful. <u>See Saucier v. Katz</u>, 533 U.S. 194, 206 (2001). The qualified immunity determination involves a two-step analysis. <u>Flores v. City of Palacios</u>, 381 F.3d 391, 395 (5th Cir. 2004). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." <u>Id</u>. (citing <u>Saucier</u>, 533 U.S. at 200). Second, the court must determine whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id</u>. (citing <u>Hope</u>, 536 U.S. at 739). If, viewing the evidence in the light most favorable to the plaintiff, "reasonable public officials could differ on the lawfulness of the defendant's actions, then that defendant is entitled to qualified immunity." <u>Haggerty v. Texas Southern University</u>, 391 F.3d 653, 655 (5th Cir. 2004); <u>see also Southard v. Texas Bd. of Criminal Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997).

**C.  Deliberate Indifference to Serious Medical Needs**

Plaintiffs claim that Defendant Benavides violated Burrell's Eighth Amendment right to adequate medical care. It is well-settled that "[t]he Eighth Amendment prohibition against cruel and

unusual punishment forbids deliberate indifference to the serious medical needs of prisoners." <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  In order to hold a prison official liable for denial of medical treatment, a plaintiff must show (1) "objectively that he was exposed to a substantial risk of serious harm;" (2) that prison "officials were actually aware of the risk;" and (3) that prison "officials acted or failed to act with deliberate indifference to that risk." <u>Id</u>. (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837 (1994)).  "Deliberate indifference is an extremely high standard to meet" and encompasses only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." <u>See</u>, <u>e.g.</u>, <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001); <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997).  An official's "failure to alleviate a significant risk that [she] should have perceived, but did not is insufficient to show deliberate indifference." <u>Domino</u>, 239 F.3d at 756; <u>see also</u> <u>Hare v. City of Corinth</u>, 74 F.3d 633, 648 (5th Cir. 1996).  It is also well-settled that negligent medical care does not constitute a valid claim under the Eighth Amendment. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993).  Rather, a prisoner's constitutional rights are violated only if "jail officials were actually aware of the risk [to the prisoner], yet consciously disregarded it." <u>Lawson</u>, 286 F.3d at 262; <u>see also</u> <u>Self v. Crum</u>, 439 F.3d 1227, 1231

-8-

(10th Cir. 2006).  In this case, there is no dispute that Burrell was exposed to a substantial risk of serious harm when he suffered the ultimately-fatal asthma attack in his cell.  The only dispute is whether Plaintiffs have conclusively established that Defendant Benavides (1) was subjectively aware of that risk, and (2) responded to that risk with deliberate indifference.

### a.   Knowledge of a Substantial Risk

The question of whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer v. Brennan, 511 U.S. 825, 842 (1994).  For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.; see also United States v. Gonzales, 436 F.3d 560, 573-74 (5th Cir. 2006).  "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In this case, Plaintiffs have failed to conclusively establish that Defendant Benavides was actually aware of a serious risk of harm to Burrell.  Although Burrell informed Defendant Benavides that he was having an asthma attack, there is evidence tending to show that Defendant Benavides had reason to doubt Burrell's claim.

-9-

First, Defendant Benavides testified that he did not know that
Burrell suffered from asthma until the day of Burrell's death,
August 1, 2004. (DE1 A at 14-15.) Prior to that day, he had never
seen anyone have an asthma attack, (PE2 14 at 39), and did not have
any medical education or training other than basic CPR (DE1 B at
71-72). Therefore, a jury could find that Defendant Benavides
might not have been able to judge the authenticity, severity, or
urgency of Burrell's medical needs. Second, although Burrell's
physical appearance at the time of the asthma attack is in dispute,
there is some evidence on record tending to show either that: (1)
Burrell appeared "pink" and normal,[3] or (2) it was too dark in the
cell for the officers to observe his condition clearly. (PE4 C at
2; E at 2.) For example, one officer testified that he "could see
[Burrell] breathing . . . [and] saw his chest moving up and down".
(DE2 C at 41.) Another officer testified that: "I know [Burrell's]
chest moved once or twice . . . I'm guessing he was breathing."
(DE3 D at 85.) Several officers at the scene, therefore, were
concerned that Burrell might be faking the asthma attack. (See,
e.g., PE2 12 at 133; 13 at 95.) Indeed, the Defendants have some
evidence tending to show that their suspicion that Burrell might
have been faking his asthma attack was reasonable. Several prison
officials testified that it is a common occurrence for inmates in

---

[3] There is evidence that at least one witness who observed
Burrell in his cell saw that "his lips were pink and that his
fingers and toes were pink." (PE4 C at 2.)

administrative segregation to fake an illness or medical condition in order to lure guards into letting them out of their cells. (See, e.g., DE2 B at 78-80; DE3 D at 86.)  There had also been instances in the past where inmates in administrative segregation had attacked officers and medical personnel.  (See DE3 D at 87.) The officers may have feared that Burrell was poised to attack because he was lying in his cell in such a way that the officers could not tell whether or not he had a weapon in his hand.  (See, e.g., DE3 D at 93.)  Viewing this evidence in the light most favorable to the Defendant, a jury could find that Defendant Benavides was not subjectively aware of the seriousness of Burrell's medical needs.  Therefore, Plaintiffs have not met their burden of conclusively establishing this element of their case.

**b.   Deliberate Indifference**

Even if Plaintiffs could conclusively prove that Defendant Benavides was actually aware that Burrell had a serious medical need, they also must establish that Defendant Benavides responded to Burrell's needs with deliberate indifference.  Deliberate indifference requires a plaintiff to show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Gonzales, 436 F.3d at 575; see also Domino, 239 F.3d at 756. Deliberate indifference encompasses only the "unnecessary and

-11-

wanton infliction of pain repugnant to the conscience of mankind."
McCormick, 105 F.3d at 1061.

Viewing the evidence in the light most favorable to Defendant
Benavides, a jury could find that he did not act with deliberate
indifference.  Defendant Benavides' evidence shows that, when an
inmate complains of a medical emergency, TDCJ and Administrative
Segregation policies instruct officers to notify medical personnel
and the shift supervisor.  (DE1 D at 52.)  Defendant Benavides
testified that, after being notified of the asthma attack, he
followed these policies by immediately calling over to Officer
Perez and instructing him to call for a supervisor and medical
assistance.  (See, e.g., DE1 C at 20-22; PE2 14 at 20-23; 15 at 1.)
Defendant's evidence also shows that, after calling for medical
help, Defendant Benavides stayed at Burrell's cell, leaving only
for "maybe three minutes."  (DE1 C at 22.)  Accepting this evidence
as true, Defendant Benavides immediately took some measures to
obtain medical attention for Burrell by summoning help.[4]  Courts
have held that an officer generally does not act with deliberate
indifference when he takes active measures to help a prisoner in
need.  See Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999) (no
deliberate indifference where "[t]he doctors actively treated
Stewart's admittedly serious condition"); Brownell v. Figel, 950

---

[4] Although Plaintiffs have some evidence tending to show
that Defendant Benavides did not immediately call for medical
assistance, this Court must believe Defendant Benavides' evidence
for the purposes of this summary judgment motion.

-12-

F.2d 1285, 1291-292 (7th Cir. 1991) (no deliberate indifference
where, among other things, the "lockup officer immediately sought
medical help" upon learning of the prisoner's condition).

Plaintiffs argue, however, that Defendant Benavides "should
have immediately escorted Mr. Burrell to medical upon learning he
was suffering from an asthma attack." (Mot. for Summ. Judg. at 3.)
Defendant Benavides' failure to enter Burrell's cell immediately
and transport him to the medical department, however, is not enough
to conclusively establish that he acted deliberate indifference.
Deliberate indifference is not established merely by showing that
the defendant was negligent in choosing one of various courses of
action in helping the prisoner. See, e.g., Stewart, 174 F.3d at
537 ("Disagreement with medical treatment does not state a claim
for Eighth Amendment indifference to medical needs"); Snipes v.
DeTella, 95 F.3d 586, 591 (7th Cir. 1996) ("Medical decisions that
may be characterized as classic examples of matters for medical
judgment, such as whether one course of treatment is preferable to
another, are beyond the [Eighth] Amendment's purview"); Bender v.
Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) ("an inmate's mere
disagreement with the course of his medical treatment fails to
state a claim of deliberate indifference").  Furthermore, as noted
above, Defendant Benavides has some evidence that the reason he did
not immediately open Burrell's cell was because there was a concern
that Burrell might pose a danger to the officers.  (DE2 B at 78-80;
DE3 D at 86; PE2 12 at 133; 13 at 95.)  Therefore, a jury could

-13-

find that Defendant Benavides did not act with deliberate indifference to Burrell's needs.  Plaintiffs' motion for summary judgment is therefore DENIED.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment (D.E. 89) is DENIED.

SIGNED and ENTERED this 7th day of September, 2006.

_____

Janis Graham Jack
United States District Judge

-14-